UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA URIBE,<br><br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>    Defendant. | No. CV 16-3942 FFM<br><br>MEMORANDUM DECISION AND ORDER |

Plaintiff brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration denying her application for Disability Insurance Benefits. Plaintiff and defendant consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Pursuant to the Case Management Order filed on June 29, 2016, on March 10, 2017, the parties filed a Joint Stipulation ("JS") detailing each party's arguments and authorities. The Court has reviewed the administrative record (the "AR") and the Joint Stipulation. For the reasons stated below, the decision of the Commissioner is affirmed.

**PRIOR PROCEEDINGS**

Plaintiff filed for benefits on July 24, 2012. (AR 164-69.) Her application was denied initially and on reconsideration. (AR 66-101.) Thereafter, plaintiff requested a hearing before an administrative law judge ("ALJ"). (AR 117-18.) On September 15,

1

2014, ALJ Sally C. Reason held a hearing. (AR 33-65.) Plaintiff was present with counsel and testified at the hearing. (*See id.*)

On October 14, 2014, the ALJ issued a decision denying plaintiff benefits. (AR 16-27.) In the decision, the ALJ found that plaintiff's impairments neither meet nor equal any listing found in 20 C.F.R. Part 404, subpart P, app'x 1. (AR 22.) Moreover, the ALJ determined that plaintiff possesses the residual functional capacity ("RFC") to "perform light work as defined in 20 CFR 404.1567(b)[,] except she cannot walk on uneven terrain; she can never climb ladders or work at unprotected heights; and she can only occasionally climb ramps/stairs, balance, kneel, stoop, crouch, and crawl." (AR 22.) In determining plaintiff's RFC, the ALJ rejected the conclusions of several of plaintiff's physicians, as well as plaintiff's own statements about her limitations insofar as they were inconsistent with the RFC. (AR 22-25.) Based on plaintiff's RFC and the testimony of a vocational expert, the ALJ found that plaintiff is capable of performing her prior work as a benefits manager or administrative assistant and is therefore not disabled. (AR 26-27.)

On March 31, 2016, the Appeals Council denied review. (AR 1-6.) Plaintiff filed the instant complaint on June 3, 2016. (Dkt. 1.)

## CONTENTIONS

Plaintiff raises four contentions in this action:

1. Whether the ALJ erred in evaluating plaintiff's physicians' opinions.

2. Whether the ALJ erred in determining which of plaintiff's impairments are severe.

3. Whether the ALJ erred in determining plaintiff's RFC.

4. Whether the ALJ erred in evaluating plaintiff's credibility.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Administration's decisions to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used proper legal standards. *Smolen v. Chater*, 80 F.3d

1273, 1279 (9th Cir. 1996) (citations omitted). "Substantial evidence is more than a scintilla, but less than a preponderance." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998) (citation omitted). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." *Auckland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (internal quotation marks omitted).

If the evidence in the record can reasonably support either affirming or reversing the ALJ's conclusion, the Court may not substitute its judgment for that of the ALJ. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citing *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)). However, even if substantial evidence exists to support the Commissioner's decision, the decision must be reversed if the proper legal standard was not applied. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1014-15 (9th Cir. 2003); *see also Smolen*, 80 F.3d at 1279.

## DISCUSSION

Because plaintiff's credibility is critical to multiple issues within this decision, the Court discusses plaintiff's fourth contention first.

A.  Whether the ALJ Properly Evaluated Plaintiff's Credibility.

    1.  ALJ's Decision

In her decision, the ALJ rejected plaintiff's subjective complaints about her symptoms as follows:

> As already explained, the claimant's subjective complaints and allegations in this case are largely unsubstantiated by medical abnormalities. Like the aforementioned imaging and other diagnostic testing, all of which was normal, the clinical findings noted throughout the record are essentially normal and, in this regard, cast significant doubt on the degree of limitation the claimant has alleged. For example, the aforementioned primary care physician, Dr. Wilson, noted upon examination of the claimant in

3

January 2012 that she had no point tenderness along [her] cervical and thoracic spine, negative TMJ, no edema, no respiratory abnormalities, no cognitive impairment, and no other abnormalities (Exhibit 6F/5). The aforementioned neurologist, Dr. Cardenas, noted on examination in August 2012 that the claimant showed no apparent distress and had normal heart and lung sounds, no peripheral edema, normal speech, normal cognition/comprehension, normal cranial nerve function, normal muscle tone and bulk, full (5/5) motor power, normal reflexes, normal sensation, normal coordination, and a normal stance and gait (Exhibit 6F/14).

Similarly, despite reporting myriad subjective complaints, the claimant exhibited no objective deficits upon comprehensive examination by a consulting physician, A. Karamlou, M.D., at the State Agency's request in October 2012. Dr. Karamlou noted that the claimant was in no acute distress and had normal blood pressure, normal heart and lung sounds, an objectively normal musculoskeletal examination, and no neurologic abnormalities. Contrary to her above referenced allegations, the claimant's gait was noted to be normal and unassisted (Exhibit 8F/3). Her range of neck and back motion was normal (Exhibit 8F/3). There was no evidence of any paraspinal muscle spasm or radiculopathy (Exhibit 8F/3). Nor was there any evidence of joint inflammation or limitation in the range of motion of the claimant's shoulders, elbows, wrists, hands, hips, knees, and ankles (Exhibit 8F/4). Dr. Karamlou noted that the claimant had well preserved (5/5) grip strength, normal bulk and full (5/5) motor power throughout all four extremities, as well as normal reflexes, normal sensation, and normal coordination (Exhibit 8F/4).

. . .

The foregoing findings simply do not suggest the presence of any impairment that has been more limiting than found herein. A number of other inconsistencies cast additional doubt on the reliability of the claimant's subjective complaints and allegations in this case. For example, in connection with her application, the claimant alleged having "bilateral ear damage and brain damage" (as well as other "physical and mental impairments of that of an 'ill elderly woman'" (Exhibit 6E/8). Yet, as detailed above, diagnostic workup indicates the claimant does not in fact have any brain or ear damage. Similarly, in connection with her appeal (in January 2013), the claimant alleged that she had recently been exposed to fluorescent light (notably, while "running several errands" for her family), and that she consequently developed "excruciating and severe headache[s], several vomiting episodes, physical pain, and total and physical weakness" (Exhibit 9E/8). If this were true, however, then one might reasonably expect to see some evidence of the need for hospitalization or other physician intervention at that time. Yet, a review of the record reveals no such evidence, suggesting the claimant may have overstated the severity of her alleged symptoms.

A number of other inconsistencies arose from the claimant's testimony at the hearing. For example, the claimant testified that she has been depressed, yet she acknowledged that she is not receiving any treatment for depression (despite the fact that she sees a psychiatrist), and she has expressly denied having any significant depression when specifically asked in the clinical context (Exhibit 7F/l & Hearing Record). She also testified that she is physically unable to do any exercise, yet she acknowledged that she does

housework (e.g., vacuuming) and yard work (e.g., gardening) (Hearing Record). Additionally, she testified that she has very severe morning pain and stiffness, yet acknowledged that she leaves home every morning and takes her kids to school (Hearing Record).

More generally, the claimant's reported daily activities are not limited to the extent one would expect, given her subjective complaints and allegations in this case. In addition to taking her kids to school in the morning, as previously mentioned, the claimant has acknowledged she is able to dress, bathe, do household chores, use a computer to check her email, and spend time with others (Exhibit 7F/3). The evidence also indicates the claimant helps her kids get ready for school, prepares breakfast and lunch, cooks dinner, drives a car, regularly shops in stores for groceries and/or other items, watches television, plays board games, goes to church, and spends time with others (Exhibit 5E/1-6). Additionally, by her own report, the claimant does some yard work, helps her kids with their homework, talks daily with her mother and brother on the telephone, and maintains "great communication" with her kids' school teachers (Exhibit 6E/4, 7 & Hearing Record).

Also inconsistent with the claimant's allegations of ongoing, disabling symptoms is evidence of alleged symptom abatement in the treatment records. A review of the treatment records reveals the claimant acknowledged significant improvement after she started taking medication, gabapentin and Ritalin, reporting that she was only "very rarely" having symptoms and that she generally felt as though she had gotten her life back (Exhibit 9F/10). In fact, in December 2012, the claimant reportedly acknowledged that she was "very satisfied with her current symptoms" (Exhibit 9F/26-27). At

that time, Dr. Chung noted: "[The claimant] is now focusing on exercise and increased activities to promote weight loss and add purpose and satisfaction to her life . . . . She now looks forward to dancing and enjoying her family" (Exhibit 9F/26-27). This evidence, like much of the other evidence discussed above and reflected in the medical records, contrasts sharply with the claimant's allegations of essentially debilitating symptoms.

(AR 23-25.)

2. Analysis

An ALJ engages in a two-step analysis to determine whether a claimant's subjective complaints about the severity of her symptoms are credible. First, the ALJ must determine whether the claimant has produced evidence of an impairment that is reasonably likely to cause the alleged symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 349 (9th Cir. 1991) (en banc). If the claimant satisfies the first prong of the analysis, she is not required to produce medical evidence supporting her symptoms' alleged severity. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citations omitted). Rather, the ALJ moves on to the second step of the analysis and may discredit the claimant's subjective complaints only upon: (1) finding affirmative evidence of malingering or (2) providing clear and convincing reasons for doing so. *Smolen*, 80 F.3d at 1281.

a. Inconsistent Statements

An ALJ may discredit a claimant where her testimony is "inconsistent with her statements to her doctors." *Terrazas v. Comm'r Soc. Sec. Admin.*, 500 F. App'x 628, 630 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (affirming credibility determination where ALJ partly discredited plaintiff because she made inconsistent statements to her doctors).

As the ALJ noted, despite plaintiff's complaints of ongoing disabling impairments, plaintiff had essentially reported to her doctors that her symptoms had

improved and were no longer disabling. To be sure, during the early months of 2012, plaintiff complained to her doctors of severe headaches, fatigue, muscle cramps and contractions, light sensitivity, and memory loss. (AR 387.) However, plaintiff subsequently began treatment for her conditions and by December 5, 2012, plaintiff was "very satisfied" with her symptoms, which had shown "marked improvement." (AR 392.) Indeed, at that time, plaintiff's condition had apparently improved so much that she felt well enough to dance at an upcoming wedding. (AR 392-93.) Apparently, plaintiff's photosensitivity had also abated. (AR 392.) Plaintiff's condition seemingly continued to improve thereafter and by February 1, 2013, plaintiff's dystonic movements and twitches occurred only "very rarely." (AR 376.) Likewise, on March 8, 2013, plaintiff reported "overall improvement" with respect to her headaches, inattention, and muscle contractions. (AR 387-90.)

Further still, the Court notes that although plaintiff's symptoms seemed to regress at times during 2013, plaintiff's medical records still demonstrated a pattern of overall improvement. For instance, while plaintiff complained of diffuse pain, fatigue, and forgetfulness in September 2013, she also stated that she was able to exercise on a stationary bike and use her family pool. (AR 413.) Likewise, plaintiff reported in March 2013 that she suffered headaches several times per week, but that she was able to treat those headaches with ibuprofen (AR 55), suggesting that the pain was less than disabling. *Cf. Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (finding that claimant's use of over-the-counter pain medication suggested her pain was less severe than alleged). Finally, plaintiff continued to report improvement in her symptoms, even into 2014. (AR 424 (most symptoms subsided), 429 (improvement with dystonic movements), 484 (report from September 2014 indicating overall improvement with symptoms).) Thus, substantial evidence supports the ALJ's determination that plaintiff's reports of improvement to her doctors undermined her complaints of continuous debilitating symptoms.

///

8

The ALJ further discredited plaintiff because although she testified that she had experienced debilitating pain and vomiting from exposure to fluorescent lights, no such episodes appear in plaintiff's medical records.[1] It was rational for the ALJ to conclude that plaintiff would have reported such severe reactions to fluorescent lights to her doctors had her symptoms been so severe they caused her to vomit. *See Saffaie v. Colvin*, 2016 WL 5799025, at *7 (C.D. Cal. Oct. 3, 2016) (finding that ALJ was permitted to discredit claimant's complaints of pain so severe she vomited, because plaintiff's medical records contained no such support).

For these reasons, the Court concludes that the ALJ permissibly discredited statements based on inconsistencies between plaintiff's complaints of disabling symptoms and her statements to her physicians.

        b.      Objective Medical Evidence

The ALJ further discredited plaintiff on the basis that her complaints, particularly her allegations of photosensitivity, were "largely unsubstantiated by medical abnormalities." Substantial evidence supports this determination. Plaintiff underwent various neurological studies, including a CT scan and an MRI. (AR 316.) However, the tests were inconclusive, at most, and provide no insight into the cause or severity of plaintiff's alleged light sensitivity. (AR 316 (CT and MRI negative), 326 (same), 383 (normal MRIs).) Likewise, while plaintiff's MRIs did discover "six white matter foci," reviewing physicians remarked that the foci were merely a *possible* source of plaintiff's *headaches*, rather than her purported photosensitivity. (AR 352 (brain matter foci "*may* be related to *headaches*" (emphasis added)).) Notably, these findings also did not provide any information about the potential severity of plaintiff's headaches. Based on the foregoing, the Court concludes that the apparent lack of

---

    [1] On October 17, 2011, plaintiff did report to Dr. Wilson that on one occasion she visited the hospital. (AR 392.) However, she stated that visit was the result of "ear pain and possible facial droop" rather than severe symptoms resulting from her exposure to fluorescent lights. (*See id.*) Accordingly, the incident does not support plaintiff's reports of debilitating headaches and vomiting.

medical evidence supporting plaintiff's complaints was a permissible basis for the ALJ's adverse credibility determination. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

     c.  Daily Activities

  An ALJ may permissibly discredit a claimant where the claimant performs daily activities that are inconsistent with her claims about her impairments. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). In this regard, "[e]ven where [a claimant's daily activities] suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally disabling impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (citations omitted).

  As the ALJ pointed out, plaintiff's admitted daily activities are inconsistent with her allegations about her limitations. At the hearing and in reports to her doctors, plaintiff alleged that she has difficulty functioning in the mornings because she suffers severe pain and stiffness. (AR 55-56 (hearing testimony); *see, e.g.*, AR 335 (reports of morning pain to doctors).) However, plaintiff also admitted that each morning she readies her children for school and drives them to campus (AR 50), which undermine her claims of disabling symptoms each morning. Moreover, despite plaintiff's complaints that she is susceptible to fluorescent light, she admitted that she shops in stores (AR 60), which presumably employ fluorescent lights. Likewise, notwithstanding plaintiff's claims of sensitivity to UV light, she admitted that she paints patio furniture (AR 392), works in her garden (AR 51), and exercises in her pool (AR 413), all of which would likely expose her to UV light. Thus, the ALJ was permitted to find, based on plaintiff's daily activities, that she is not as limited as she asserts.

///

### d. Harmless Error

Finally, the ALJ discredited plaintiff because she made seemingly inconsistent statements about her alleged depression, indicating at one time that she was depressed after having denied depression. While the Court declines to expressly find that the ALJ erred in this regard, it notes that the law of this circuit generally disfavors discrediting claimants for reasons related to the recognition of mental impairments. *See Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299-1300 (9th Cir. 1999) ("[W]e have particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." (internal quotation marks omitted)). Nonetheless, even assuming the ALJ erred by relying on plaintiff's statements about her mental health in order to discredit her claims, the error was harmless because the ALJ gave numerous other reasons for discrediting plaintiff. *See Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (finding that ALJ's impermissible reason for discrediting claimant was harmless in light of numerous permissible reasons provided); *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008) (holding that an ALJ's error is harmless so long as "the error does not negate the validity of the ALJ's ultimate [credibility] conclusion" (alterations in original) (internal quotation marks omitted)).

B. <u>Whether the ALJ Permissibly Rejected the Opinions of Plaintiff's Physicians</u>.

Here, plaintiff asserts that the ALJ improperly rejected the opinions of three treating physicians — Dr. Lou Ellen Wilson, Dr. Doris Cardenas, and Dr. Sue Chung. In the Social Security context, the Ninth Circuit distinguishes among opining physicians in the following manner: (1) treating physicians; (2) examining physicians; and (3) nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, the opinions of treating physicians are entitled to the most weight, while the opinions of examining physicians are entitled to more weight than the opinions of

nonexamining physicians. *Id.* Where the opinion of a treating physician is uncontroverted, the ALJ must provide clear and convincing reasons for rejecting that opinion. *Id.* Even if contradicted by another doctor, the opinions of treating physicians can be rejected only for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.*

### 1. Dr. Wilson and Dr. Cardenas

#### a. Opinions

Plaintiff asserts that the ALJ erred in rejecting the opinions of Dr. Wilson and Dr. Cardenas, both of whom opined that plaintiff suffers from headaches and spasms as a result of her exposure to fluorescent light. Specifically, Dr. Cardenas opined that:

> One condition I am following [plaintiff] for is migraines[.] Her headaches are directly exacerbated by fluorescent lighting and extended period[s] of time in front of a computer screen. I have advised avoiding all these things at work as they will worsen [t]he migraines[.]

(AR 309.) Likewise, Dr. Wilson stated that:

> This is in reference to my patient Ms Uribe who I have been following for quite a while now, with several neurological symptoms that include headaches, memory loss, vertigo, numbness, tingling and fatigue. She has had multiple workup[s], [and] has tried various forms of medications including alternative treatment through chiropractic care. She was found to be hypersensitive to fluorescent lighting with exacerbation of symptoms[,] particularly her headaches and facial spasms. Ms Uribe has been referred to a neurologist, Dr. Cardenas, who agrees that she should not be exposed to this lighting, and in addition limit her computer use to 4 h[ou]rs a day with 10 minute breaks in between, approximately every h[ou]r, secondary to peripheral numbness of hands and feet. In light of the chronicity

[sic] of her symptoms, we are requesting permanent work

accom[m]odation.

(AR 310.)

b. ALJ's Decision

The ALJ rejected the opinions of Drs. Watson and Cardenas for the following reasons:

> The undersigned notes that Drs. Watson and Cardenas previously wrote letters in support of the claimant's request for work accommodations and, in so doing, indicated she had been advised to avoid fluorescent lighting and prolonged computer use (Exhibit 3F/l, 2). However, these restrictions are given no weight because they lack a clear medical basis and are not otherwise supported by any objective findings (as thoroughly explained earlier in this decision).

(AR 25.)

c. Analysis

At the outset, the Court notes that aside from the letters stating plaintiff must limit her exposure to fluorescent light and computer monitors (AR 309-10), Drs. Wilson and Cardenas did not provide any opinions about plaintiff's functional abilities. Rather, the physicians' "findings" (i.e. memory loss, headaches, dizziness, etc.) are actually progress notes, which ALJs are not required to provide specific and legitimate reasons for rejecting. *See Gutierres v. Astrue*, 2012 WL 58320072, at *2 (C.D. Cal. Nov. 15, 2012) (finding that ALJ was not required to accept or reject progress notes that plaintiff had mischaracterized as physician's opinions). To the extent plaintiff argues that the ALJ altogether failed to consider those progress notes, plaintiff's argument fails, as the ALJ discussed Dr. Wilson's and Dr. Cardenas' progress notes in her decision. (AR 19-21, 23-24.)

Moreover, the ALJ was not required to include "headache[s], memory loss, vertigo, numbness, tingling and fatigue" in her RFC determination simply because they

are referenced in plaintiff's physicians' progress reports. Rather, the ALJ was permitted to rely on conflicting substantial evidence in determining that plaintiff was not disabled. *See Smolen*, 80 F.3d at 1279; *see Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). Here, the ALJ declined to include those symptoms in the RFC because they were only determinable from plaintiff's discredited testimony, rather than any objective medical evidence. Moreover, the ALJ also noted the reports of improvement and symptom abatement discussed above. Accordingly, substantial evidence supports the ALJ's decision to leave headaches, memory loss, vertigo, numbness, tingling, and fatigue out of plaintiff's RFC.

Turning to the written opinions of Drs. Wilson and Cardenas, the ALJ properly rejected the physicians' conclusions that plaintiff must avoid fluorescent light and prolonged exposure to computer monitors. Neither Dr. Wilson nor Dr. Cardenas conclusively attributed plaintiff's light sensitivity to any objectively determinable medical impairment. Indeed, while the physicians' treatment notes "document ongoing concern" (as plaintiff puts it) that plaintiff suffers from sensitivity to fluorescent light, neither set of notes refer to any laboratory findings or test results to support the doctors' opinions. Further still, neither Dr. Wilson's nor Dr. Cardenas' reports unequivocally state that plaintiff exhibited photosensitivity. Rather, both physicians simply note that plaintiff complained of photosenstivity. Accordingly, it seems that Dr. Wilson and Cardenas' opinions both lack an apparent objective basis and are unsupported by the doctors' own treatment records. Thus, the ALJ was permitted to reject the opinions on those bases. *See Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995) (holding that ALJ was permitted to reject physician's opinion as "conclusory and unsubstantiated by relevant medical documentation").

Since no objective medical evidence supports the opinions of Drs. Wilson and Cardenas, the only bases for the opinions are plaintiff's subjective complaints.

However, since the ALJ properly discredited plaintiff's statements about her symptoms, the ALJ was permitted to reject the conclusions of Dr. Wilson and Dr. Cardenas.[2] *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (holding that ALJ may reject physician's opinion that is based largely on claimant's statements that were properly discredited).

   2. Dr. Chung
      a. Opinions

While Dr. Chung's findings are not set forth in a single place, plaintiff avers that Dr. Chung found plaintiff suffers from the following symptoms:

> bilateral ear pressure and pain, severe vertigo, twisting and turning of her face and neck to the right side, cramping of her hands and feet into a claw like contracted pattern, difficulty gripping and releasing due to claw like cramping of her hands/fingers, difficulty arising from a kneeling position at times with cramping and stiffness in her right calf muscle causing difficulty relaxing or extending her leg, sensitivity to light especially fluorescent light which caused increasing twisting and turning of her mouth and neck to the right side, progressive declination in cognitive abilities including impaired memory and ability to complete tasks, slowed thought and speech,

///
///

---

[2] Notably, the ALJ did not expressly reject the opinions of Drs. Wilson and Cardenas because they were based on plaintiff's subjective statements. However, the ALJ's permissible adverse credibility determination sufficiently demonstrates that she considered but rejected the opinions' subjective bases, but at a different point in the decision. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (noting that a reviewing court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion"); *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) ("[W]e will not fault the agency merely for explaining its decision with less than ideal clarity." (internal quotation marks omitted)).

15

and impaired gait with inability to take long strides due to feeling off balance.

(Joint Stip. 8 (citing AR 397).)

      b.     ALJ's Decision

With respect to Dr. Chun's diagnoses, the ALJ found the following:

> [T]he record shows that Dr. Chung eventually did diagnose the claimant as having fibromyalgia (in or around August 2013) (Exhibit 12F/21). Although she described the claimant's symptomatology as "unusual" (i.e., not typical of fibromyalgia or other rheumatologic condition), the undersigned accepts Dr. Chung's eventual diagnostic conclusion and finds that the claimant has fibromyalgia. The undersigned further finds that this condition has significantly limited the claimant's ability to perform certain basic work activities and is therefore "severe" within the meaning of the regulations.

(AR 19.)

      c.     Analysis

Here, Dr. Chung does not appear to have provided any opinions about plaintiff's impairments or functional limitations; what plaintiff characterizes as Dr. Chung's opinions are actually progress notes and plaintiff's self-reported medical history. Indeed, were the Court to accept plaintiff's contention that Dr. Chung's progress notes constitute "opinions," substantial evidence would still support the ALJ's decision, as plaintiff also reported improvement to Dr. Chung. In any event, as was the case with the progress notes of Drs. Wilson and Cardenas, the ALJ was not required to provide specific and legitimate reasons for rejecting Dr. Chung's progress notes. Therefore, the ALJ did not err by simply adopting Dr. Chung's fibromyalgia diagnosis without further comment.

/ / /

/ / /

C. <u>Whether the ALJ's RFC Determination Is Based on Substantial Evidence</u>.

As noted above, an ALJ's decision need only be supported by substantial evidence. *Smolen*, 80 F.3d at 1279. Additionally, "[w]here the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *See Morgan*, 169 F.3d at 599.

Here, plaintiff contends that the ALJ was required to include the following in her RFC determination: "headaches, memory loss, vertigo, numbness, tingling, fatigue and hypersensitivity to fluorescent lighting causing exacerbation of headaches and facial spasms." However, plaintiff's argument is largely just a rehashing of her prior arguments, as she essentially asserts that the ALJ's RFC determination should have taken into account plaintiff's subjective complaints and the findings of plaintiff's physicians. The Court has already provided reasons why the ALJ permissibly chose not to adopt on plaintiff's complaints and her physicians' reports in concluding that plaintiff is not disabled.

Moreover, with respect to plaintiff's purported numbness, tingling, vertigo, and fatigue, the ALJ's purported failure to include any of those symptoms in plaintiff's RFC was harmless. Plaintiff has wholly failed to provide any evidence that inclusion of these symptoms in plaintiff's RFC would have resulted in a further reduced range of abilities. Moreover, her admitted daily activities — particularly painting and gardening — seemingly indicate that plaintiff's symptoms did not limit her ability to use her hands. Finally, her vertigo appears accounted for in the RFC, as she is restricted from heights and uneven terrain.

The ALJ also noted that plaintiff's memory had improved with treatment so that she no longer needed reminders from her husband to perform daily tasks. (*Compare* AR 396 *with* AR 429.) With respect to plaintiff's purported memory loss, the ALJ also relied on the opinions of Dr. Colonna, who found that plaintiff was only "mildly limited" in her ability to "remember and carry out detailed instructions." (AR 21.)

/ / /

Because the ALJ was permitted to rely on the opinions of Dr. Colonna and plaintiff's statements, she was not required to include memory loss in her RFC determination.

D. Whether the ALJ Properly Concluded That Plaintiff Only Suffers from Two "Severe" Impairments.

Here, plaintiff asserts that the ALJ should have found that the following are "severe" impairments: "memory loss, headaches, bilateral ear pain and fullness, fatigue, abnormal facial movements and sensitivity to fluorescent light." (Joint Stip. at 27.) This argument fails.

At step two of the five-step sequential evaluation,[3] an ALJ must determine whether any of the claimant's impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii). As plaintiff points out, "severity" is a *de minimis* standard meant to prevent against consideration of baseless applications. *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). However, whether an impairment is "severe" does not further affect the ALJ's treatment of that impairment; it is simply a threshold determination. Thus, an error at step two is harmless unless plaintiff can demonstrate that the ALJ would have found plaintiff more limited had the ALJ labeled a specific impairment "severe." *See Aarestad v. Comm'r of Soc. Sec. Admin.*, 450 F. App'x 603, 605 (9th Cir. 2011) (holding that any error in ALJ's omission of "chronic obstructive pulmonary disease" as severe impairment was harmless because there was no evidence that the disease would affect plaintiff's ability to perform past work); *see also Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (holding that ALJ's failure to label plaintiff's bursitis severe was harmless because ALJ included limitations caused by bursitis in RFC).

---

[3] If the ALJ conclusively determines at any step that a claimant is or is not disabled, the ALJ does not proceed to the next step. *Id.* If the ALJ completes step five and concludes that a claimant's limitations do not preclude work that exists in significant numbers in the national economy, the claimant is not considered disabled. 20 C.F.R. § 404.1520(a)(4)(v). At steps one through four, the burden rests with the claimant to establish disability. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.*

With the exception of "bilateral ear pain and fullness," the Court has already determined that the ALJ either accounted for the symptoms listed above or appropriately excluded them from the RFC. Thus, whether the ALJ impermissibly failed to find that any of those impairments was severe is inconsequential; the impairments would not have affected the RFC determination even if they were "severe." With respect to the ear pain and fullness, the Court is unable to discern how those symptoms would have altered the ALJ's RFC determination, particularly because they appear to have affected plaintiff only sporadically.[4] Thus, plaintiff's failure to demonstrate how labeling any of these symptoms "severe" would affect the outcome of the ALJ's decision renders any error in this regard harmless.

## CONCLUSION

For the foregoing reasons, the judgment of the Commissioner is affirmed.

IT IS SO ORDERED.

DATED: November 22, 2017

/S/ FREDERICK F. MUMM
FREDERICK F. MUMM
United States Magistrate Judge

---

[4] Indeed, the record seems to support a determination that plaintiff's ear pain and fullness are non-severe, as they do not appear to have more than a minimal effect on plaintiff's ability to work. Nonetheless, because it does not alter the ultimate decision in this case, the Court assumes that the ALJ erred by labeling those impairments "non-severe."